15461

STATE v. BAGWELL *ET AL.*

(23 S. E. (2d), 244)

*Messrs. Whiteside & Taylor,* of Spartanburg, Mr. John E. *Stansfield,* of Aiken, and *Messrs. Martin & Sturkie,* of Lexington, Counsel for Appellants,

*Solicitor Jeff D. Griffith,* of Saluda, *Solicitor Samuel R. Watt,* of Spartanburg, *Mr. T. B. Greneker,* of Edgefield, *Mr. R. Milo Smith,* of Lexington, and *Mr. J. Fred Buzhardt,* of McCormick, Counsel for The State, Respondent,

November 9, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

The defendants, Clarence Bagwell, George . Logue and Sue Logue, were convicted in Lexington County for the murder of Davis W. Timmerman, and sentenced to death by electrocution. The homicide was committed in Edgefield County on September 17, 1941. On the 5th day of January, 1942, a special term of Court was held in Edgefield County, and the grand jury of that county returned an indictment against Joe Frank Logue and Clarence Bagwell, as principals, and George Logue and Sue Logue, as accessories before the fact, to the murder of Timmerman. Upon motion of the three last-named defendants for a change in venue from Edgefield County to Lexington County, made upon the ground that they could not obtain a fair trial in Edgefield County, the trial Judge after hearing affidavits and argument announced that it was the opinion of the Court that the motion should be granted and the change of

venue should be made to Lexington County in respect to all four of the defendants. Immediately upon this announcement being made the attorney for Joe Frank Logue, who had made no motion for a change of venue, objected to the transfer of the case as to him, and stated that the defendant, Joe Frank Logue, desired to be tried in the county of Edgefield, where the crime was committed. Whereupon the trial Judge excluded Joe Frank Logue from the order granting the change of venue, and included only the defendants, Clarence Bagwell, George Logue and Sue Logue, and they were tried in the county of Lexington on the 21st day of January, 1942. At this trial Joe Frank Logue testified as a witness for the State.

There is no need to set out the evidence in great detail, because the questions made by the appeal will be sufficiently clear from a brief statement of the facts.

It appears from the record that Wallace Logue, the husband of the defendant, Sue Logue, and a brother of the defendant, George Logue, was killed in Edgefield County by Davis Timmerman in 1940. Upon his trial for murder in March, 1941, he was acquitted, and from the day of his acquittal, as shown by the evidence for the State, the defendants, George Logue and Sue Logue, together with Joe Frank Logue, plotted his death to avenge the death of their kinsman.

Joe Frank Logue, the nephew of Wallace Logue and of the defendants, Sue Logue and George Logue, was a member of the police force of the City of Spartanburg, and, as stated, testified for the State in the trial in Lexington County. According to his testimony, the defendants, George Logue and Sue Logue, immediately upon the acquittal of Davis Timmerman, set plans in motion to accomplish his death. For several months they persistently urged Joe Frank Logue to find some man who would kill Davis Timmerman for the sum of $500.00, which they agreed to pay as soon as the deed was committed. Joe Frank Logue fully entered into

the plan for the assassination; he knew the defendant, Clarence Bagwell, who lived in Spartanburg, and Bagwell upon his solicitation, readily agreed to kill Davis Timmerman for the sum offered.

The commission of the murder was arranged for September 17, 1941. The defendant, Bagwell, did not know, and had never seen his intended victim, nor does it appear that he had ever been in Edgefield County. On September 17th, Joe Frank Logue borrowed an automobile from a friend, and under circumstances of the greatest secrecy, picked up Bagwell somewhere on the outskirts of Spartanburg, and together they traveled to the scene of the killing.

Davis Timmerman owned and operated a combination grocery store and service station at a crossroads settlement in Edgefield County, about eight miles from the town of Edgefield. The store was located on one side of the highway, and his home was situated on the other side, nearly in front of the store. When Joe Frank Logue and Clarence Bagwell, in the late afernoon of September 17, 1942, reached the crossroads, the automobile in which they were traveling was stopped immediately in front of Timmerman's store; Bagwell was driving, and Logue was on the floor in the back of the car, covered by a black raincoat. He had been born and reared in this community, and did not wish to have his identity discovered. Bagwell got out of the automobile, walked into the store, and without warning shot Timmerman, who was alone in the store, killing him instantly; he knew Timmerman only by description. After committing the murder, Bagwell ran out of the store, jumped into the automobile, and he and Joe Frank Logue drove back to Spartanburg. Logue remained hidden in the automobile until they had traveled several miles from Timmerman's store; he then got into the front seat of the automobile with Bagwell. In the early part of November of the same year, these two, together with George Logue and Sue Logue, were arrested for the murder of Davis Timmerman.

Clarence Bagwell made a full confession of his participation in the crime. Joe Frank Logue, shortly after he was placed in jail, also confessed the part he had played in the commission of the homicide, implicating his uncle and his aunt, the defendants, George Logue and Sue Logue, Bagwell did not testify at the trial, but the officers who had heard his confession, narrated it fully to the jury. Joe Frank Logue, who was not upon trial, testified in detail. He told of the several trips made by Sue Logue and George Logue to Spartanburg to see him in connection with the planned. murder; that three days after the homicide, as agreed upon with them, he went to their home in Edgefield County, which was about one mile from the home of Davis Timmerman, and received the sum of $500.00 from George Logue with which to pay Bagwell; that after returning to Spartanburg he turned this money over to Bagwell. In addition to the testimony of Joe Frank Logue, there are many facts and circumstances in the case tending to show the active particpation of George Logue and Sue Logue in the conspiracy to kill Davis Timmerman. Throughout the trial, however, they asserted their innocence, and denied any part in the crime.

The appellants' first ground of appeal raises the issue that the trial Judge erred in refusing to admit in evidence the order granting the change of venue from Edgefield County to Lexington County as to the three defendants who were upon trial. It appears from an examination of that order that it carried a statement by the Judge that in his opinion none of the defendants, including Joe Frank Logue, could procure a fair and impartial trial in Edgefield County. It will be recalled that although no motion had been made for a change of venue by Joe Frank Logue, it was the announced intention of the trial Judge *sua sponte* to transfer his case to Lexington County along with the case of the other defendants. Upon objection being made by counsel for Joe Frank Logue, he was not included in the

change, but the venue of his case remained in Edgefield County.

It is contended by the appellants that the introduction of the order containing the statement of the trial Judge that it was his opinion that none of the defendants could receive a fair trial in Edgefield County, and the objection of Joe Frank Logue to being tried in any other county, would tend to show that Joe Frank Logue had received certain inducements from the State to testify as the State's witness. It is urged that the order was competent and should have been admitted in evidence upon the trial to test the credibility of the witness, Joe Frank Logue, and to show that this witness expected some leniency when he himself should be placed on trial in Edgefield County.

We think that there is no merit in the exception raising this question.

In overruling the motion and excluding the order, the Court stated: "It is admitted that the change of venue was had, with the exception of the defendant, Joe Frank Logue, and my reason for it is not pertinent to this inquiry."

The Court also said: "I rule that the order is not competent for the reason that it was a mere opinion on my part as to whether or not Joe Frank Logue could get a fair trial in Edgefield County. The defense is endeavoring to make a witness out of the Court."

These statements were made in the absence of the jury.

The declared purpose in offering in evidence the order changing the venue was to get before the jury the statement made therein by the trial Judge that none of the defendants could obtain a fair trial in Edgefield County. Of course this included Joe Frank Logue. Its introduction in evidence would have been tantamount to making the trial Judge a witness in the case.

> Because of his duties, it is erroneous for a presiding Judge to testify as a witness in a case being tried before him. 23 C. J. S., Criminal Law, § 972, page 303.

In such a case the maxim prevails that no one shall be both Judge and witness in the same cause. The rationale of this doctrine is obvious. As was well said by the Court in *People v. Dohring,* 59 N. Y., 374, 17 Am. Rep., 349, in discussing the propriety of a Judge's giving evidence in a trial before him: "Because such practice, if sanctioned, may lead to unseemly and embarrassing results, to the hindering of justice, and to the scandal of the courts."

The question came before the Supreme Court of Arkansas in *Rogers v. State,* 60 Ark., 76, 29 S. W., 894, 897, 31 L. R. A., 465, 46 Am. St. Rep., 154, and it was there said: "However careful and conscientious he [the Judge] may be, the chances are great that by thus testifying he will to some extent detract from the dignity that should surround the functions of his high office. Instead of the impartial judge administering the law with a firm and even hand, he takes on for the time the appearance of a partisan, endeavoring to uphold by his testimony one side against the other. More than likely he provokes unseemly conflicts between himself and counsel, and arouses the distrust of the party against whom he testifies. In addition to this, the higher his character and standing as a judge the more danger that he thus gives the party in whose favor he testifies an undue advantage over the opposing side."

The introduction of the order containing the statement by the trial Judge that Joe Frank Logue could not obtain a fair trial in Edgefield County would have been in effect evidence in the case by the trial Judge, and it would have been error to have admitted it. The position of the appellants is untenable.

It is likewise urged that the lower Court erred in refusing the appellants the right to cross examine Joe Frank Logue with reference to matters and things pertaining to the change of venue from Edgefield County to Lexington County, it being submitted that the appellants should have been allowed to cross examine Joe Frank Logue as to such matters for

the purpose of showing that the attitude and conduct of the witness evidenced that he did not expect to be tried, in consideration of his becoming a witness for the State, all of which affected his credibility, and would have revealed his motive for testifying against the defendants.

We think it clear that there is no merit in the exceptions raising this question, and that there were taken under a misapprehension.

In passing upon the question of how far the appellants might go in cross examining the State's witness, Joe Frank Logue, the Court ruled: "Confine yourself to asking (1) if he had joined in a motion for the change of venue, and (2) whether or not he resisted a change of venue, or (3) whether he was tried at the January term of Court. He shall have the right to explain his answer if he deems it necessary."

Elaborating upon this ruling, the Court further stated: "Mr. Stansfield, I want to call your attention (to) the fact that I am ruling only on the admissibility of that order and that you will have the right to cross examine the witness as to why he was willing to be tried in Edgefield and why he objected to any change of venue as to his case. The bars are down insofar as the examination of the witness by defense as to his reasons why he did object to a change of venue as to his case, and why he desired to be tried in Edgefield, in order to develop from the witness the very things expressed by me in my order."

The record shows that on direct examination, the witness, Joe Frank Logue, testified that he realized that his testimony, when his trial should be later held, might send him to the electric chair; that no one had made any promises of leniency to him, or had offered any inducements; that he was testifying freely and voluntarily because he wanted to tell the truth "just as it was, from beginning to end." He said that he had been promised no mercy or immunity, and had not received "even sympathy by any official."

This witness under cross examination by the attorney for the defendant, Clarence Bagwell, further stated that he had decided to tell the truth after he had talked with Mr. Nicholson, his attorney. When under cross examination by Mr. Stansfield, attorney for the defendants, George Logue and Sue Logue, he stated that at the Special Term of Court held in January, 1942, at Edgefield he, together with the other defendants, Clarence Bagwell, George Logue and Sue Logue, were jointly indicted for the murder of Davis Timmerman; that the other named defendants moved for a change of venue; that he resisted the change of venue because he wished to be tried in Edgefield County, where the crime was committed, and that if the case had been tried at that time he would have been a witness for the State because he intended to tell the truth. He further testified that as yet he had never been tried, although there had subsequently been held several terms of Court in Edgefield County.

Mr. B. E. Nicholson, the attorney for Joe Frank Logue, was offered as a witness by the defendants, George Logue and Sue Logue, and under examination by their attorney with reference to what promises if any had been made to his client as an inducement for him to testify for the State, made this statement: "It is absolutely definite that nothing whatsoever has been promised by the State, or by the counsel associated with the State, to Joe Frank Logue or to me as his attorney. I have not asked them, I have not approached them, and they have not approached me."

It is plain from this résumé of what occurred, that the appellants were not unduly limited in their cross examination of the witness, Joe Frank Logue, upon the matters complained of.

The next question has to do with the testimony of B. B. Brockman, a deputy sheriff of Spartanburg County, who was one of the officers who heard the confession of the defendant, Clarence Bagwell. When testifying on direct ex-

amination for the State he was allowed to state, over objection, a conversation between Joe Frank Logue and Bagwell, which occurred in the latter's confession, as follows: "Yes, Sir, he stated that he (Joe Frank Logue) told him that he would pay him Five Hundred Dollars. That he had an uncle and aunt who had plenty of money * * *. He stated that the uncle and aunt had plenty of money and would furnish the money to the sum of Five Hundred Dollars, and that the money would be available as soon as the job was done * * *."

Appellants contend that it was error to admit this statement in evidence because it constituted hearsay testimony against the defendants, George Logue and Sue Logue; and, furthermore, that the trial Judge refused to instruct the jury that such statement should be considered only as evidence against the defendant, Bagwell, and should not be taken as evidence against any of the other defendants in the case.

In overruling the objection, the trial Court held that the testimony objected to was a part of the confession of the defendant, Bagwell, and that all of it was admissible under proper instructions.

This ruling is uniformly upheld by the decisions of this Court, and it is needless to do more than cite some of the cases in point. The entire confession was certainly admissible against Bagwell: *State v. Green,* 48 S. C., 136, 26 S. E., 234, 235; *State v. Workman,* 15 S. C., 540; *State v. Dodson,* 16 S. C., 453; *State v. Cooler,* 112 S. C., 95, 98 S. E., 845; *State v. Jeffords,* 121 S. C., 443, 114 S. E., 415; *State v. Roberts,* 129 S. C., 77, 123 S. E., 770; *State v. Holmes,* 171 S. C., 8, 171 S. E., 440.

In the case of *State v. Jeffords, supra,* the Court has this to say: "The next assignment of error is in allowing confessions of Harrison and Treece to be introduced in evidence, in so far as they contain accusations of Jeffords. The rule is very clear that the confessions must be given as

made. If we strike out any part, then the confession ceases to be the confession as made. The rule in such cases is clearly to let all the defendant said be given, and the jury cautioned not to consider it against anyone, except the man who makes it."

In the case at bar, just before the testimony objected to was admitted, the trial Judge was careful to warn the jury that such testimony should not be considered against any of the other defendants in the case. He said: "Now, just a minute, Mr. Witness, I have to instruct this jury. Mr. Foreman and Gentlemen of the Jury, if the defendant, Bagwell, made a confession, and if that confession was made by him freely and voluntarily, you should consider that as evidence only against the defendant, Bagwell, and, under no circumstances, should you take it as evidence against any other of the defendants in the case."

Not only was this caution given at this stage of the trial to the jury, but it was specifically repeated in his general charge by the presiding Judge.

It is obvious that there is no merit in the exceptions raising these questions.

It is next assigned as error that the trial Judge on cross examination by appellants, refused to permit the witness, B. B. Brockman, upon objection being made, to answer the question whether on one occasion Joe Frank Logue was voted the best police officer in the City of Spartanburg. The question was ruled incompetent, but it is contended that it bore upon the question of intimidation, there being evidence in the record from Joe Frank Logue that George Logue and Sue Logue, his uncle and aunt, had pursued and harassed him to join with them in bringing about the death of Davis Timmerman, and, in effect, finally threatened him if he refused to assist them. Counsel for the appellants argue that the answer to the question should have been admitted to show that Joe Frank Logue was a fearless man, and hence was acting upon his own initiative.

We agree with the Circuit Court that the proposed evidence was entirely irrelevant and incompetent upon any issue of the case. Whether Joe Frank Logue had been voted the best police officer of the City of Spartanburg could not have enlightened the jury upon any question at issue. However, by questions which immediately followed the question objected to, appellants got into the record evidence from Mr. Brockman that he had never heard of Joe Frank Logue as an officer being terrorized by people, but that so far as he, the witness, knew, Joe Frank Logue was an officer "who is willing to stand up and go after his man." So that the appellants obtained the benefit of the evidence they sought.

The next exception alleges the refusal to charge the following written request submitted by the defendants, George Logue and Sue Logue: "The Court charges the jury that while the conviction of George Logue and Sue Logue may be rested upon the uncorroborated statements of their alleged accomplice, nevertheless the Court instructs the jury that such uncorroborated statements of the alleged accomplice should be received by the jury with caution and should be scrutinized by the jury with great caution."

We find no merit in this exception. A Judge cannot express in his charge, or intimate any opinion as to the weight or the sufficiency of testimony of an accomplice without violating the prohibition of the Constitution as to charging upon the facts. Const., Art. V, § 26.

In *State v. Weldon,* 89 S. C., 308, 71 S. E., 828, 829, the Court approved the following charge: "The law in this state for a long number of years was declared by our Supreme Court to be that it was unsafe to convict upon the uncorroborated testimony of an accomplice. But our Supreme Court has recently changed that doctrine, and it is not the law now. The law in regard to the testimony of an accomplice is just like it is as to the testimony of any other witness in a case. That is to say, that

you are the sole judges of the weight you should give to such testimony."

The above ruling has been consistently adhered to. In the comparatively recent case of *State v. McAdams,* 167 S. C., 405, 166 S. E., 405, 408, the request to charge was as follows: "Although the testimony of a co-conspirator is always admissible, it must be scrutinized with care. And although this is not a positive rule of law, yet juries are generally cautioned that there ought not to be a conviction, on such testimony without corroboration, and the corroboration must come from other evidence in the case aside from the testimony of other coconspirators. The weight to be attached to such evidence is for the jury alone who must consider it in view of the other evidence and reach their conclusions on a view of the whole' case."

Commenting upon this request, this Court in its opinion said: "To have charged the request would have been in effect to instruct the jury that they ought not to convict on the uncorroborated testimony of an accomplice, and that such corroboration should come from other evidence in the case and not from the testimony of other coconspirators. This would have been a charge on the facts in violation of section 26 of article V of the Constitution, which declares that 'judges shall not charge juries in respect to matters of fact, but shall declare the law.' See *State v. Clark,* 85 S. C. 273, 67 S. E. 300; *State v. Sowell,* 85 S. C. 278, 67 S. E. 316. The law with regard to the testimony of an accomplice is the same as to the testimony of any other witness in the case."

It follows that the exception raising this question must be adjudged without merit.

The remaining question to be considered imputes error to the trial Judge in commenting upon the facts in his instructions to the jury. It is urged that in making the following charge the Judge invaded the province of the jury.

We emphasize the portions of the charge under criticism:

"This indictment contains three counts: The first count charges against the defendant, Bagwell, with having unlawfully, feloniously, and with malice aforethought, taken the life of Davis W. Timmerman. Therefore, that count in the indictment charges defendant, Clarence Bagwell, with murder. In that count appears the name of Joe Frank Logue, but Joe Frank Logue is not on trial in this case, so that you are not concerned with a verdict as to Joe Frank Logue. The venue was not changed in his case. The case against him is for trial in Edgefield County.

"In the second count of the indictment, the State of South Carolina charges that the defendants, George Logue and Sue Logue, feloniously, and of their malice aforethought, did counsel, hire, advise, and procure Clarence Bagwell and Joe Frank Logue to murder Davis W. Timmerman. While the name of Joe Frank Logue as a defendant is in the second count of the indictment, Joe Frank Logue is not on trial in this case, but that count remains against him in the indictment under which he is to be tried in Edgefield County. Therefore, the second count of the indictment charges George Logue and Sue Logue with being accessories before the fact of murder, the murder of the late Davis W. Timmerman."

The appellants take the position that it was an issue in the case as to whether or not Joe Frank Logue would ever be tried, and that the lower Court in stating to the jury that the case against Joe Frank Logue was for trial in Edgefield County took from the jury this issue, for if the jury believed that Joe Frank Logue would receive leniency in consideration of his becoming a witness for the State, then his credibility would be seriously impaired.

It is not necessary to cite authority to support the proposition that in the course of the trial of a criminal case the trial Judge must refrain from all comment which tends to indicate his opinion as to the weight or

sufficiency of the evidence, the credibility of the witnesses, the guilt of the accused, or as to the controverted facts, and the Constitution expressly prohibits the Judge from charging them as to the facts.

But it would be extremely hypercritical to say in this case that the trial Judge in the instruction complained of, in any sense commented upon the facts or expressed his opinion as to the weight or the sufficiency of the evidence or the credibility of the witnesses. It is too clear for argument that the trial Judge who had just commenced his charge, was construing the indictment and classifying the parties for the purpose of identifying the defendants being tried. It was incumbent upon the Court to differentiate the venue in the case of Joe Frank Logue from that of the defendants who were upon trial in Lexington County. This was in accord with the undisputed evidence, and the trial Judge was merely making it clear that the venue as to the three appellants had been changed from Edgefield County to Lexington County, and that the case of Joe Frank Logue had not been tried, but that the place of trial as to him would remain in Edgefield County. To hold otherwise would be to look away from the obvious.

In determining the correctness of the instructions, they should be considered as a whole; and if, as to them, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

We are unable to accept the view that the jury could have been misled or influenced by the statement that the case against Joe Frank Logue was for trial in Edgefield County, or that this reference to the venue was a charge upon the facts. Nor did it take away from the jury, or tend to do so, any question or implication which might arise from the evidence as to immunity or leniency which might be accorded Joe Frank Logue by reason of his having testified for the State. In fact all of the evidence

on this point brought out by the State, and by the appellants, was to the effect that no promise or agreement of any kind had been given Joe Frank Logue by the State. The charge given by the Court was fair, judicial and dispassionate.

A motion for a new trial made upon the same grounds herein discussed was properly overruled.

> No errors of law exist in the record, and the jury by their verdict settled the facts. All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.